IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 1:20-cv-01551-RBJ

JAMES BABCOCK,

    Plaintiff,

v.

UNITED STATES OF AMERICA,

    Defendant.

---

FINDINGS OF FACTS, CONCLUSIONS OF LAW AND ORDER OF JUDGMENT

---

This case was tried to the Court from November 8 to 9, 2021. Plaintiff James Babcock seeks recovery under the Federal Tort Claims Act (FTCA) for injuries suffered when he was allegedly hit by a United States Postal Service (USPS) mail truck. Mr. Babcock brings his claims under the theory that Mr. Sean Bailey, the driver of the mail truck, acted negligently by hitting him with a mail truck, and that defendant the United States of America is vicariously liable for Mr. Bailey's allegedly negligent acts.

## I. BACKGROUND

On October 26, 2017 Mr. Babcock was at 7509 S. Trenton Court performing tree trimming services with his crew. That house is in a cul-de-sac. Mr. Babcock owned a tree trimming and landscaping company called Lumber Bee Tree Service. After the trimming was

mostly complete, Mr. Babcock crossed the street to get a business card from his truck to give to the client. On the date in question, Mr. Babcock weighed nearly 300 pounds and had suffered from diabetes for his entire adult life.

At the same time, USPS driver Sean Bailey was delivering mail in Trenton Court. Trenton Court had been on Mr. Bailey's delivery route on and off for roughly eighteen years. He was familiar with the residents who lived there. When delivering mail in Trenton Court on October 26, 2017, Mr. Bailey noticed that there was a tree-trimming crew in front of 7509.[1]

What happened as Mr. Babcock was crossing the street back to 7509 and as Mr. Bailey was delivering the mail to 7509 is hotly contested. Mr. Babcock testified that the truck hit him going between fifteen and twenty miles per hour. Mr. Babcock testified that the left front mirror on the mail truck broke off when the truck hit him. He testified that he hit his knee, hand, and head as he fell after the hit. He also testified that he experienced pain in his neck, back, and head beginning immediately after he was hit. Mr. Bailey claims that he parked in front of 7509, delivered the mail to the mailbox, and returned to and reentered the truck within seconds. When he returned, and was seated in his truck, he claims he saw Mr. Babcock, looking dazed, dizzy, and confused, hanging on to one of the mirrors on the front left side of his truck. Seconds later, Mr. Bailey says that Mr. Babcock collapsed to the ground, pulling the mirror off as he fell. Importantly, though Mr. Bailey was seated in the truck with the keys in the ignition when he claims to have seen Mr. Babcock fall, he asserts that the truck was off.

---

[1] There is no certified transcript of the trial. In describing the background and making its findings of fact, the Court has considered the reporter's rough draft transcript as well as the Court's own notes and recollection of the evidence.

Three members of the tree trimming crew, all of whom saw some parts of the accident, testified at trial. Mario Rodriguez ("Big Mario") testified that while he did not see the truck make contact with Mr. Babcock, he saw the truck moving as he saw Mr. Babcock fall. Mario Casorna-Rodriguez ("Little Mario") testified that he saw the mail truck moving and one or two minutes later he heard others yell that Mr. Babcock had been hit by the mail truck. Little Mario was picking up some tools while the accident occurred and did not see the mail truck make contact with Mr. Babcock. Nicholas Rodriguez ("Nick") testified that while he did not see the truck move or Mr. Babcock get hit, he did see Mr. Bailey talking on his phone with earbuds in immediately prior to the accident when Mr. Bailey was putting the mail in the mailbox at 7509.

There is conflicting testimony on what happened immediately after Mr. Babcock fell or was hit. At some point, Mr. Bailey and Morgan Phillips, an employee of Mr. Babcock's, went to help Mr. Babcock to his feet. Mr. Babcock testified that he remained on the ground for eight or nine minutes, in pain and trying to regain his bearings. Mr. Bailey, Big Mario, and Nick all testified that Mr. Babcock was back on his feet almost immediately. Little Mario testified that it took Mr. Babcock "a while" to get back up. Mr. Bailey testified that while he was helping Mr. Babcock up, he heard one of Mr. Babcock's employees ask if Mr. Babcock had "passed out from the diabetes again." Mr. Babcock then walked to the house at 7509 S. Trenton Court.

The police were not called nor was an ambulance. Mr. Babcock said he did not want to call the police or ambulance because he did not want to get Mr. Bailey in trouble. Nick testified that Mr. Babcock told him that he did not want an ambulance called because the driver had a family, and that he did not want him to get in trouble.

Following the accident, Mr. Babcock called his mother and told her that he had been hit by a mail truck.  Mr. Babcock told her that he had not called the police or an ambulance because the driver had begged him not to because the driver did not want to lose his job.  Mr. Babcock also called his friend, Jim Sander, a few hours after the accident and told him that he had been hit by a mail truck.  He also told Mr. Sander the same things he told his mother about the accident.

Mr. Bailey also made a call in the immediate aftermath of the incident.  Mr. Bailey called one of his supervisors, Erica Randleman, less than a minute after he had helped Mr. Babcock to his feet. Mr. Bailey told Ms. Randleman the same story he testified to in court—that a man had been bracing himself on the front left mirror of the mail truck, and that the man had pulled down the mirror when he fell.  Roughly an hour later, Mr. Bailey met Ms. Randleman back at Trenton Court to complete an incident report.  At that time, Mr. Babcock and his employees had departed. Mr. Bailey showed Ms. Randleman where the event had taken place.  Later that day, after his route was finished, he wrote and signed an account of what occurred.  In that statement, Mr. Bailey told the same story of seeing a man looking dizzy, grabbing the mirror to try to keep his balance, and pulling off the mirror when he fell.

Later that day, Mr. Babcock sought medical attention for his injuries at the emergency room.  He testified that they took x-rays to ensure that no bones had been broken and advised him to take an over-the-counter pain medication for his headache.  The records from the emergency room visit indicate that Mr. Babcock had no known head strike, that he had a normal Glasgow Coma Scale result, and that he did not report a loss of consciousness.  Since then, Mr. Babcock has received consistent medical treatment from a chiropractor and physical therapist for what he describes as ongoing symptoms from injuries incurred in the accident.

## II.   FINDINGS OF FACT

To succeed on his negligence claim, Mr. Babcock must prove each element by a preponderance of the evidence.  *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 212 (Colo. 1984). Proving negligence requires proving that Mr. Bailey breached his duty of care to Mr. Babcock, causing Mr. Babcock's injuries.  *Id.* at 209.  Mr. Babcock claims that the negligent conduct causing injury was Mr. Bailey's hitting Mr. Babcock with the mail truck.  Considering all the evidence, I find that Mr. Babcock has not proven he was hit by the truck by a preponderance of the evidence.

Overall, I found Mr. Babcock credible, but there are elements of his account that do not accord with other evidence on the record.  He testified that he remained on the ground following the accident for eight or nine minutes.  Mr. Bailey, Big Mario, Little Mario, and Nick all testified that Mr. Babcock was on the ground for only a few seconds.

Mr. Babcock testified that when he was hit, the mail truck was travelling at between fifteen and twenty miles per hour.  Mr. Babcock's injuries to his head, hand, and knee were not the kind of injuries that one would sustain from a motor vehicle accident where the car was going that fast.  He had a very small abrasion on his hand.  The abrasion on his knee was more significant and his knee appeared swollen.  However, when he went to the emergency room, the medical providers there noted no lacerations or visible injuries to his head.  Had Mr. Babcock been hit by a car going fifteen to twenty miles per hour, as he consistently reported to various doctors and testified to in court, I would expect much more severe injuries to the skin and the rest of his body.  Further, I credit Mr. Bailey's testimony that a mail truck could not get to a

speed of fifteen miles per hour in ten to twelve feet, which Mr. Babcock testified was the distance between himself and the mail truck when the truck began to accelerate.

Mr. Babcock testified that after he was hit, Mr. Bailey begged him not to call the police or an ambulance out of fear that he would lose his job. Mr. Babcock told his mother and Mr. Sander this as well. Nick heard from Morgan Phillips that Mr. Babcock had told him not to call the police because he did not want to get the driver in trouble. However, none of Mr. Babcock's employees that testified personally heard Mr. Bailey beg Mr. Babcock not to contact the police or emergency medical services. It is difficult to believe that Mr. Bailey would have begged Mr. Babcock not to call the cops for fear of losing his job. In the minutes after the accident, the first thing Mr. Bailey did was call a supervisor and tell her about the incident and the damage to the vehicle. As a result of these inconsistencies, I find that Mr. Babcock was less credible in his testimony about the accident and its immediate aftermath than the other witnesses who were present at the scene.

The testimony from other witnesses did not tip the scale in favor of Mr. Babcock's account. No witness, other than Mr. Babcock, testified that they saw the truck hit Mr. Babcock. Little Mario and Big Mario testified that they saw the mail truck moving either shortly before or as Mr. Babcock went to the ground. Little Mario's testimony does not contradict Mr. Bailey's version of events, nor does it confirm Mr. Babcock's. Little Mario testified that he saw the truck moving one or two minutes before Mr. Babcock went down. Both Mr. Bailey and Mr. Babcock testified that the accident transpired within a few seconds. Mr. Bailey further testified that he drove the truck from mailbox to mailbox, turning off the engine for a few seconds at each to

deliver mail. Mr. Bailey's account could be correct even if Little Mario accurately recalled the truck moving minutes before the accident.

Big Mario's testimony is harder to square with Mr. Bailey's version of events. Big Mario testified that he saw the truck moving as he saw Mr. Babcock fall. However, Mr. Bailey testified that it took him only two or three seconds to deliver the mail at 7509 S. Trenton Court. Mr. Bailey testified that Mr. Babcock fell within a split second of his returning to his truck from delivering the mail. Big Mario testified that he could not exactly see what was happening because there was a truck obstructing his view. This case turns on what happened in a few seconds. I found both Big Mario and Mr. Bailey credible, but Mr. Bailey had an unobstructed view. It is equally plausible that with the mail truck partially obstructed, in the few seconds at issue in this case, Big Mario did not see the truck stop moving before Mr. Babcock fell.

Mr. Babcock did not meet his burden of proving, by a preponderance of the evidence, that the mail truck hit him and caused his injuries.

### III.   CONCLUSIONS OF LAW

Under the Federal Tort Claims Act (FTCA), the United States is liable for tort claims "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674 (1988). A defendant is liable for negligence under Colorado law if plaintiff can show "(1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, and (3) the breach proximately caused the plaintiff's injury." *Ayala v. United States*, 49 F.3d 607, 611 (10th Cir. 1995)(citing *Casebolt v. Cowan*, 829 P.2d 352, 356 (Colo.1992)). Mr. Babcock claims that Mr. Bailey breached his duty of care by hitting Mr. Babcock with the truck.

Here, Mr. Babcock was unable to prove breach of the duty of care, i.e., negligence, by a preponderance of the evidence. As a result, he has not proved that the defendant is liable for his claimed damages.

## ORDER

For the foregoing reasons, the Court directs that final judgment be entered in favor of the defendant, the United States of America, and against the plaintiff, James Babcock. As the prevailing party, the defendant is awarded its reasonable costs pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 22nd day of November, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge